[683 NYS2d 175]

300 EAST 34TH STREET Co., Respondent, v GEORGE HABEEB et al., Appellants.

First Department, December 16, 1997

APPEARANCES OF COUNSEL

*Patricia L. Feldman* of counsel, New York City *(Byron Golden,* attorney), for appellants.

*Aury Bennett Stollow, P. C.,* New York City, for respondent.

### OPINION OF THE COURT

Tom, J.

Respondent occupant Gregory Habeeb appeals an order of the Appellate Term, First Department (Parness, J. P., and Davis, J.; Freedman, J., dissenting) which reversed the Civil Court judgment, and directed entry of a final judgment of possession in favor of petitioner landlord, finding that appellant has failed to establish familial succession rights to decedent's rent-stabilized apartment.

Appellant is the nephew and godson of the deceased tenant, Richard Assatly, who resided at 300 East 34th Street, apartment 23E, in Manhattan, from 1976 to the time of his death. Assatly died of complications from AIDS in July 1993, at which time appellant had been living with him. In February 1994, the landlord served the decedent's estate and appellant with a 10-day notice to cure, alleging an illegal assignment from the deceased tenant to appellant. On or about March 15, 1994, the landlord served a 10-day notice of termination. It commenced the instant summary holdover proceeding on or about March 25, 1994. A nonjury trial of this proceeding was conducted on May 10, 1994.

Appellant claimed familial succession rights under Rent Stabilization Code (9 NYCRR) § 2523.5 (b) (1) as enacted at that time, which provides that a member of a tenant's family, who has resided with the tenant for not less than two years prior to the tenant's vacating the housing accommodation, is entitled to succession rights. Appellant contends that he had been residing at the subject apartment, with his ailing uncle, as his primary residence for at least two years prior to the uncle's death.

Appellant testified that he moved into the subject apartment on a full-time basis in November 1990 to care for his uncle, who recently had been diagnosed with AIDS. Prior to that time, appellant resided with his parents in Peekskill, New York, but would stay at his uncle's apartment two or three nights a week. He described his life-long relationship with his uncle, and that between his mother and the uncle, as being very close. In the spring of 1993, the uncle's condition worsened and he became bedridden, requiring the need of a care giver. In March 1993, appellant changed employment in order to obtain more flexible hours to attend to his uncle's medical and personal needs. He described his efforts to care for his uncle as including cleaning bandages, cooking and feeding, transporting the uncle to chemotherapy and various medical appointments, and transporting work assignments from, and back to, the uncle's employer.

In support of appellant's position, three other witnesses testified on his behalf: Irene Mora, the tenant's housekeeper; Frank Tignino, the uncle's close friend; and Virginia Habeeb, the tenant's sister who also was appellant's mother. We do not overlook the potential interest of these witnesses; nor do we assume bias.

Mora testified that she was the uncle's housekeeper from the mid-1980's to the time of his death. She observed appellant residing full time in the apartment starting in November or December 1990. She recalled that it was prior to Christmas because of a Christmas card she had received from appellant. Thereafter, she washed and ironed appellant's clothes, did his shopping and observed his presence during meals. The uncle installed an additional towel rack in the bathroom, where appellant's personal items became a regular presence after November 1990.

Tignino, a close friend of the uncle's, also observed appellant living in the apartment on a daily and nightly basis for more than two years prior to the death of the uncle, often dining with him in the apartment. Early in the uncle's illness, Tignino would telephone daily—with appellant often answering the phone—and visit several times a week. As the uncle's illness progressed, Tignino was in the apartment almost daily. Tignino and appellant tried to ensure that either of them was always there. Tignino recalled that appellant stayed very close with the uncle "because he was very fragile." Tignino, an interior designer, even designed a closet for appellant's own use when appellant moved in on a full-time basis, noting that the uncle often complained about appellant's lack of neatness.

Appellant's mother corroborated appellant's testimony as to the dates of appellant taking up full-time residence, recalling that it was prior to the holiday season in 1990. She testified that appellant left only off-season clothing in the Peekskill home, taking all other personal items with him. Starting in 1990, she forwarded mail to appellant at the apartment and when catalogues arrived, she sent the retailer the change of address. She also corroborated appellant's care-giving intentions.

Jose Padea, the building's doorman, testified for the landlord. He knew the tenant as well as appellant. Padea was present at the door for a Monday to Friday, 8:00 A.M. to 4:30 P.M. shift, but not at other times. Padea testified that prior to the spring of 1993, he saw appellant only sporadically in the building, but that he began to see appellant regularly after that time. Appellant concedes that he started to see Padea regularly in the mornings only after March 1993. However, Padea's testimony is not inconsistent with appellant's testimony that prior to that time, appellant's work hours were such that he would have neither exited nor entered the building during Padea's shift. Appellant testified that prior to March 1993, his hours of employment were from 7:00 A.M. to between 6:30 P.M. and 8:00 P.M., which would explain the intermittence of Padea's encounters with appellant. In any event, we have found similar testimony, that an employee had not seen a tenant for a three-year time period, to be "hardly dispositive on the issue of whether the tenant did in fact live there" (*Matter of Rose Assocs. v State Div. of Hous. & Community Renewal*, 121 AD2d 185, 186). Moreover, although appellant noted that he would see "Joey" or "Louis", the other doormen in the mornings, and that he had tipped them two Christmases ago, the landlord did not call as witnesses any of the three other doormen who were responsible for the remaining daily shifts.

Appellant's witnesses were not controverted, except by the testimony of the doorman that he saw appellant sporadically prior to the spring of 1993. Civil Court, after trial, finding all witnesses to be credible and that appellant had established succession rights to the subject rent-stabilized apartment, dismissed the landlord's holdover petition.

The Appellate Term majority reversed the Civil Court, primarily on the basis that the "paper trail" of residency was insufficient to substantiate the nephew's claim. Appellate Term found the "customary indicia of * * * continuous residence", consisting of "critical documents", to be "woefully lacking". The

dissent, by contrast, found "ample" evidence of at least two years of residency.

With respect to the "paper trail", the landlord adduced evidence that appellant paid Federal, State and local taxes prior to 1993 utilizing the Peekskill address; that wage statements prior to 1993 were consistent with tax statements; that appellant had not paid New York City residency taxes prior to 1993; that appellant maintained the Peekskill address for voter registration purposes; and that his driver's license renewal in May 1991 identified the Peekskill address as his residence.

Appellant explained that he did not change several of the documents while the uncle was alive because, not thinking ahead with respect to succession rights, he had not thought that changes were necessary. He further averred that he did not change his driver's license because he did not drive; and that he did not see the need to change his address, especially since his parents forwarded his mail to the apartment. The landlord also established that appellant had not opened a joint account with the uncle, utilizing the apartment's address, until May 1993. Appellant testified that the uncle paid the rent and all expenses for the apartment until May 1993, when he became too feeble to use his hands, which prompted the opening of the joint account. By that time, appellant himself was signing rent checks. Appellant also explained that, although his uncle paid telephone and utility bills in his own name, appellant, feeling obliged to contribute, repaid the uncle by taking him to plays (numbering in the "dozens"), movies or out to dinner. Appellant also claimed to have used the apartment address for some credit cards, but the testimony was inconclusive as to when that practice commenced. Conversely, the landlord produced no evidence that appellant had actually resided in Peekskill during the relevant time periods. In our review of this testimony, appellant's explanations have the appearance of candor.

It is well established that, in the context of a nonjury trial, the trial court's fact-finding "should not be disturbed on appeal unless it is obvious that the court's conclusions could not be reached under any fair interpretation of the evidence, especially when the findings of fact rest in large measure on considerations relating to the credibility of witnesses" (*Nightingale Rest. Corp. v Shak Food Corp.*, 155 AD2d 297, 297-298, *lv denied* 76 NY2d 702; *Claridge Gardens v Menotti*, 160 AD2d 544; 1 Newman, New York Appellate Practice § 4.03 [5]). Although an appellate court enjoys a power to

review the record as broad as that of a trial court (*Universal Leasing Servs. v Flushing Hae Kwan Rest.*, 169 AD2d 829), "due regard must be given to the decision of the Trial Judge who was in a position to assess the evidence and the credibility of the witnesses" (*supra,* at 830).

Appellate Term's majority opinion left undisturbed Civil Court's findings that the witnesses were credible. In our own review of the record, we find no basis to reach a result contrary to Civil Court as to the testimonial evidence. The practical result is that the testimony established the fact of appellant's two-year residence prior to the death of the uncle. The Appellate Term ruling, though, may be read to effectively impose a legal requirement that a prospective tenant provide documentary evidence of the change of address, a construction required neither by statute nor by controlling case law. The question posed by Appellate Term's ruling then, is whether documentary evidence is necessary as well as sufficient. We conclude that it is not. Although we have found "the traditional indicia of primary residence," including driver's license, voter's registration, tax returns, telephone and bank records, to be competent evidence establishing a period of residency (*Lesser v Park 65 Realty Corp.*, 140 AD2d 169, 174, *lv dismissed* 72 NY2d 1042), we have not found it to be required evidence. While documentation, or the absence thereof, might be a significant factor (*Matter of Rose Assocs. v State Div. of Hous. & Community Renewal, supra*; *Cox v J.D. Realty Assocs.*, 217 AD2d 179) in evaluating primary residency, especially in the case of the dubious credibility of witnesses, it would not be a dispositive factor (*West 15th St. Assocs. v Sassoonian*, 156 AD2d 137), especially when there is a preponderance of credible personal testimony (*Matter of Rose Assocs. v State Div. of Hous. & Community Renewal, supra*).

Based on the credible testimonial evidence presented at trial, it cannot be said that the Civil Court's decision was not a fair interpretation of the evidence. Rather, the credible evidence demonstrated that appellant lived with his uncle "as part of a nurturing and stimulating family relationship * * * as a family unit for at least the requisite period of time" and "not in furtherance of some nefarious scheme to succeed to the apartment" so that he "comes within [the Code's] protective aegis" (*Lesser v Park 65 Realty Corp., supra,* at 174).

We reject the landlord's characterization of the respective evidence in this case, of appellant and landlord, as being "equal". Nor did Civil Court find the respective witnesses' testimony to

be "evenly balanced," requiring, for a preponderance standard, judgment against the party bearing the burden of proof (*Rinaldi & Sons v Wells Fargo Alarm Serv.*, 39 NY2d 191, 196 [if evidence is equally balanced, plaintiff has failed to meet its burden]; *D'Amico v Manufacturers Hanover Trust Co.*, 173 AD2d 263 [same]). To the contrary, once appellant produced witnesses whose testimony established the requisite length of residence, the landlord failed to controvert such evidence. The landlord failed to produce any witnesses who were in the apartment during the relevant time period to rebut this testimony. Even the landlord's employee's testimony, which is limited by the employee's work shift, is not inconsistent with appellant's evidence. The documentation alluding to appellant's parental residence, addressed and explained before the trial court, does not counterbalance appellant's evidence.

Finally, the landlord's claim that the 1997 amendment of Rent Stabilization Code (9 NYCRR [RSC]) § 2520.6 (o) should be applied retroactively is without merit. The provisions of the Rent Stabilization Code in effect at the time of the subject proceedings granted to certain enumerated "family members", including a nephew, a right of succession for a rent-stabilized apartment when the tenant of record permanently vacates the dwelling.

Although "nephew" was omitted in RSC § 2520.6 (o) by the Rent Regulation Reform Act of 1997 (L 1997, ch 116), retroactive application of the amendment is not in order. Except as otherwise specified in the 1997 legislation, the effective date is the date of enactment, June 19, 1997 (L 1997, ch 116, § 46). The clause of the 1997 Act amending RSC § 2520.6 (o), deleting "nephew" as a qualifying family member, section 21 (c), is not one of the enumerated sections of the 1997 Act allowing for retroactive application (*see, e.g.*, § 46 [1] [applying certain amendments to proceedings presently "pending in any court"]). In view of the judicial preference for prospective application of statutory amendments absent clear legislative expression of retroactive intent (*Gleason v Gleason*, 26 NY2d 28), and especially in view of the manifest legislative intent to apply the amendment to RSC § 2520.6 (o) only prospectively, we find no basis for retroactive application so as to omit "nephew" from the statutory category of protected persons. Our ruling in *Lesser v Park 65 Realty Corp.* (*supra*), in which we viewed the family succession provisions of the RSC to be of a remedial nature, and hence potentially retroactive, does not support a contrary result. We specifically linked that conclusion to the

underlying purposes of the RSC to protect tenants, in further-ance of which we noted the liberality of construction to be ac-corded family succession. We noted that "[t]he family succes-sion provisions * * * were enacted in response to the harsh consequences resulting from displacement from one's home upon the death or departure of a named tenant with whom a family member, not named in the lease, resided." (*Lesser v Park 65 Realty Corp., supra,* at 171.) By contrast, the recent amendment in contention is restrictive rather than protective from a tenant's perspective, and only provides hitherto un-available remedies to a landlord. An expansive application of the RSC thereby is undercut rather than supported, militating further against retroactive application of the subject amend-ment.

Accordingly, the order of the Appellate Term of the Supreme Court, First Department, entered October 23, 1996, which re-versed the judgment of Civil Court, New York County (Howard Malatzky, J.), entered May 10, 1994 in tenant's favor, should be reversed, on the law and the facts, without costs, and the landlord's petition dismissed.

WALLACH, NARDELLI and COLABELLA, JJ., concur with TOM, J.; MURPHY, P. J., dissents and would affirm for the reasons stated by the majority at Appellate Term.

Order of the Appellate Term of the Supreme Court, First Department, entered October 23, 1996, which reversed the judgment of Civil Court, New York County, entered May 10, 1994, reversed, on the law and the facts, without costs, and the landlord's petition dismissed.