William P. McCooe, J.
(dissenting). I respectfully dissent. Louis Beretta (Beretta) was the rent-controlled tenant in apartment 3, at 23 Jones Street, Manhattan, until he passed away at age 85 in December 1995. His monthly rent was $56. Judith Keebler-Beretta (Keebler) married Beretta on April 2, 1992, when she was 34 years old and he was 82 years old and in poor health. She claims succession rights to the subject apartment as his surviving wife.
The issue is whether the subject apartment was Keebler’s primary residence for the one year prior to Beretta’s death. The one-year period for a disabled person rather than the two-year period is utilized to eliminate any factual issue as to whether she was disabled.
Keebler testified she knew Beretta for approximately one year before they were married and that she moved into his apartment on their wedding day. Her address on the marriage certificate was 7 Jones Street. She has epilepsy, and although in otherwise good health at the time of her marriage, during 1993, 1994 and 1995 she was hospitalized on several occasions due to her condition. In 1994 and 1995 when her seizures occurred she would go to friends at 42 Grove Street at least twice a month for help so they could restrain her during her convulsions. Beretta, who suffered from emphysema and had difficulty walking, could not help during her seizures. Keebler further testified that except for her hospitalizations and the time spent at 42 Grove Street, she had no residence other than the marital apartment.
Keebler admitted that the address on her driver’s license issued December 9, 1994 was 7 Jones Street, apartment 5, and that between 1992 and 1995 she used 7 Jones Street as her mailing address, allegedly because the mailbox at 23 Jones *802 Street had. been broken into. Keebler testified that in 1992 she had sent the managing agent for 23 Jones Street a notice by certified mail that she was living with Beretta.
On cross-examination Keebler testified she had lived with James Hampton until her marriage to Beretta (her second) and prior to that time she lived on East 17th Street for a year. She testified that all her important mail was sent to 23 Jones Street, but she did not produce any mail with that address. Her junk mail was sent to 7 Jones Street.
The record from the Hospital for Joint Diseases was produced and upon cross-examination it was shown that the only address Keebler used for her hospital visits during the period of the marriage was 7 Jones Street.
Keebler testified Beretta was very ill and unable to care for himself completely during the time of the marriage, that he had daily home help before and during the marriage and that a home attendant stayed with him 24 hours a day during his last year of life. The attendant shared the living room with Beretta while Keebler lived in a small room about the size of a bathroom in the back of the apartment. She knew the names of the attendants but did not call them as witnesses.
Jack Hindell (Hindell), a friend of Keebler’s for 13 or 14 years, testified that he often saw Keebler with Beretta in the neighborhood in 1990 or 1991 and that he went to their apartment several times to do repairs that the superintendent would not do. In the spring of 1993 he put a new door on the bedroom at Keebler’s request. The bedroom was not much larger than the mattress and the door he installed could not open completely. He also repaired the mailbox lock for the apartment. He observed that Keebler had her clothes in this room and that Beretta slept in the living room. He testified Keebler did not stay with him but he could not say where she was staying.
Lisa Paskin (Paskin) testified she lived at 7 Jones Street and knew Keebler from the neighborhood for about 13 years and had known Beretta since the early 1990’s. She saw Keebler and Beretta dozens of times together in the neighborhood, smiling, holding hands and “romancing” each other. She testified she saw Keebler enter and leave the subject building regularly, carrying groceries, toiletries and laundry. She never visited Keebler at the 23 Jones Street apartment.
Chris Hampton (Hampton) testified that he had known Keebler for 8 or 10 years and had known Beretta for 25 or 30 years. He had seen Beretta sitting outside a laundromat at Seventh *803 Avenue and Bleecker Street while Keebler did their laundry. He saw them together in the neighborhood until Beretta got immobile. He testified that because of her seizures Keebler would go to him and his roommate for help. He believed Keebler used 7 Jones Street to receive mail.
Cano Derekovic (Derekovic), the superintendent for several buildings on Jones Street including numbers 7 and 23, testified that he has lived in the area for six years and has been the superintendent for 7 Jones Street for four years and the superintendent for 23 Jones Street for six years. He knew Beretta and that nurses were staying in his apartment 24 hours a day for the year or two before he died. Aside from the health care workers, no one lived with Beretta. He knew Keebler and saw her at 7 Jones Street, apartment 5, when he first moved to Jones Street and almost every day thereafter leaving that building. After Beretta died he began seeing Keebler at 23 Jones Street. He testified that he and people in the neighborhood knew Keebler lived at 7 Jones Street, apartment 5.
Derekovic further testified Keebler’s name is not on the mailbox or buzzer at 23 Jones Street and that another building resident paid the rent for Beretta. He never saw Keebler use the apartment at 23 Jones Street before Beretta died and she was in front of 7 Jones Street nearly every day. He testified that he had seen Beretta and Keebler together in the neighborhood at various times and that he had seen Keebler leaving 23 Jones Street and had seen Keebler and Beretta in the hallway at 23 Jones Street, but never together in the apartment.
Landlord’s managing agent testified that Beretta’s rent was paid by Natalie Buchman (Buchman), another tenant in the building, and Buchman had told her that she and Beretta’s sister paid Beretta’s other bills.
The court below denied landlord’s request for a missing document charge relating to the failure of Keebler to produce any tax returns, although in her answers to interrogatories she had stated she filed tax returns in 1991 and 1992. The returns should have been produced to show what address she used and the denial was erroneous. The court further improperly denied landlord’s request for a charge that married couples may maintain separate residences. (Matter of Rose Assocs. v State Div. of Hous. & Community Renewal, 121 AD2d 185 [1st Dept 1986], lv denied 69 NY2d 601 [1986].)
The jury found by 5 to 1 that Keebler had resided with Beretta since the inception of their marriage until his death and judgment was entered in her favor. Although the court had *804 denied landlord’s motion for judgment notwithstanding the verdict, it did order a new trial on the ground that an attorney jury member had improperly influenced the verdict by indicating that there was a legal presumption that a husband and wife share a common residence. This court reversed that order on Keebler’s appeal (23 Jones St. Assocs. v Beretta, 182 Misc 2d 177) and the landlord now seeks review of the merits of the reinstated judgment in favor of Keebler.
The failure of the trial court to charge as requested that a husband and wife may maintain separate residences was reversible error. The importance of this legal principle became obvious when considered in the light of the prior appeal as to the legal effect of separate residences. Contrary to the position of the majority and Keebler, this is not a matter of common knowledge.
The second ground raised for reversal is that “ ‘the evidence so preponderate [s] in favor of the [plaintiff] that [the verdict] could not have been reached on any fair interpretation of the evidence.’ ” (Lolik v Big V Supermarkets, 86 NY2d 744, 746 [1995] [internal quotations omitted].) The trial court charged that Keebler had the burden to establish that she had an “ ‘ongoing, substantial physical nexus’ ” with the subject premises for actual living purposes. (Berwick Land Corp. v Mucelli, 249 AD2d 18.) This requires “objective imperical evidence.” (Emay Props. Corp. v Norton, 136 Misc 2d 127.)
The two basic categories of evidence are documentary and testimonial. The documentary evidence will be considered first. There is absolutely no documentary evidence in the record that links Keebler to the subject apartment. Documentary evidence includes letters, bank accounts, public documents, a telephone listing and any other form of writing. The hospital record on multiple dates lists Keebler as living at 7 Jones Street, as does the driver’s license and the marriage license application.
The only testimonial evidence that Keebler actually resided at the subject premises was hers. Hindell was the only witness who visited the apartment and he did not testify that Keebler resided there — only that she had her clothes there. Paskin never went to the subject apartment and her only knowledge was that she saw Keebler going in and out of the building. Hampton never went to the subject apartment and his testimony was valueless. Derekovic testified for the landlord that Keebler did not reside at the subject apartment but at 7 Jones Street, apartment 5, and like Keebler he is an interested witness.
*805 It is undisputed that Beretta was receiving home care from the time of the marriage to the time of his death and the number of hours increased until a point, either 1 or 2 years prior to his death, that he was receiving 24-hour home care. These home care providers were the persons who had personal knowledge as to whether this was Keebler’s primary residence. Keebler failed to explain why they were not called. It is no answer that the landlord could have called them since it would not have had the personal relationship that Keebler would have had with them if she actually lived there. Nor did she call the identified male tenant at 7 Jones Street, apartment 5, to deny that she lived there. The issue is not whether Keebler came to the subject apartment on a regular basis or even stored clothes there. The issue is whether this was her primary residence for actual living purposes and the landlord does not have to prove where she lived.
The only evidence supporting Keebler’s position is her testimony. This is contradicted by documentary evidence and the testimony of the superintendent. The logic of her testimony regarding the two mailboxes reflects her credibility. Her failure to produce the witnesses with knowledge is unexplained. Her failure to produce documentary evidence is also unexplained. The documentary evidence is not simply absent but contradicts her testimony. The record is totally lacking “these customary indicia of continuous residence.” (Cox v J.D. Realty Assocs., 217 AD2d 179, 184; 420 E. Assocs. v Estate of Lennon, 223 AD2d 408.) While the absence of documentary evidence is not fatal to a primary residence case, there should be “a preponderance of credible personal testimony.” (300 E. 34th St. Co. v Habeeb, 248 AD2d 50, 55.)
The judgment should be reversed and a new trial directed.
Parness, P. J., and Gangel-Jacob, J., concur; McCooe, J., dissents in a separate memorandum.