OPINION OF THE COURT
Paul A. Victor, J.
Relief Sought
Motion by plaintiff Oscar Rodriguez (Rodriguez) for partial summary judgment on the issue of liability pursuant to Labor Law § 240 (1); and in a cross motion for an extension of time, *285 pursuant to CPLR 2004 and 3116, plaintiff seeks an extension of time to serve an “errata sheet.” Cross motions by defendant 45 Broadway Limited Partnership (45 Broadway), Qwest Communication Corporation (Qwest) and OD&P Construction, Inc. (OD&P) for summary judgment dismissing those claims by plaintiff brought pursuant to Labor Law § 240, and by defendant 45 Broadway for summary judgment dismissing plaintiff’s claims brought pursuant to Labor Law § 200 common-law negligence.
A Novel Nuance To a Section 240 Issue
Must an injured worker actually fall from a scaffold or a ladder in order to qualify for section 240 (1) protection? The Third Department of the Appellate Division said that “in the absence of a fall” there has been no elevation-related risk of the type intended to be covered by Labor Law § 240 (1) (see, Kelleher v Power Auth. of State of N.Y., 211 AD2d 918, 920 [3d Dept 1995]). The First Department has in the past cited this Third Department case with approval (see, Tolino v Speyer, 289 AD2d 4 [1st Dept 2001]). However, in a recent decision it appears that the First Department has now distanced itself from this judicially imposed requirement (see, Pesca v City of New York, 298 AD2d 292 [1st Dept 2002]).
Facts
Plaintiff sues to recover for personal injuries sustained as a result of an accident in which he was injured while on a ladder on June 18, 1999. The accident took place on the 26th floor of the premises known as 45 Broadway, New York. The defendant 45 Broadway, the building owner, entered into a lease agreement with defendant Qwest, who thereafter obtained the services of OD&P, which was the general contractor at the subject premises on the date of the accident. Subsequently, OD&P procured the services of Power Cooling, Inc. (Power) pursuant to a subcontract entered into between the two entities. Power was engaged in the installation of an air-conditioning unit. At the time of the accident, plaintiff was an employee of Power.
Plaintiff testified at his deposition that on June 17, 1999, he was scheduled to perform a start-up of a brand new air-conditioning unit installed earlier by plaintiff’s coworkers. Due to a defect in the piping, the plaintiff and his work crew could not perform the start-up, and returned the following day to rectify the error in the piping of the air-conditioning unit. *286 Plaintiff testified that he informed OD&P’s project manager that he would be making the necessary repairs to the piping before performing the start-up procedure of the new unit. The pipes were located within a drop ceiling, and the work required plaintiff to use a six-foot wooden A-frame ladder which was owned neither by the plaintiff nor his employer. The superintendent for OD&P instructed him to place the ladder on top of a carpeted floor, which was covered first by a layer of masonite and then ultimately by a plastic tarp. Once the ladder was positioned on top of the plastic tarp, plaintiff ascended the ladder reaching the second rung from the top and began working on a threaded union fitting of the piping machine. Plaintiff explained, “I was ‘breaking a fitting loose’ the ladder shook and I got cut on the support bracket * * * .” This laceration caused several nerves and tendons in plaintiffs arm to be severed. At his deposition plaintiff did not mention anything which would have indicated a fall while on the ladder. In fact, in response to the question, “did you fall off the ladder?,” plaintiff stated, “no.” However, in this motion and in the changes included in plaintiffs errata sheet he now claims that “the ladder shook and slid and caused me to loose [sic] my balance and slip down step on the ladder with one foot.” (Emphasis added.) In any event, he asserts that the accident and injuries would not have occurred if the ladder was properly secured; and he moves for partial summary judgment on the issue of liability pursuant to Labor Law § 240 (1).
Plaintiff also seeks relief pursuant to CPLR 2004 and 3116 for an order deeming the service of plaintiffs examination before trial errata sheet dated August 16, 2001 timely as a matter of law. It is in this errata sheet that the plaintiff now claims that he did in fact fall when on the ladder.
In support of the present motion, plaintiff has presented, inter alia, his own sworn affidavit stating the events surrounding the accident. He has also presented a sworn affidavit of coworker Rafael Ramos who was present in the same area of the construction site and witnessed the accident. Ramos states, among other things, that plaintiff “was working near the top of an A-frame wooden ladder * * * which stood on top of a plastic tarp which covered masonite which covered carpeted flooring * * * [and that he] saw the ladder shake and slide on the plastic tarp * * * [and plaintiff] then slipped down the ladder about 1 or 2 steps and yelled.”
Codefendants 45 Broadway, Qwest and OD&P cross-move for summary judgment dismissing plaintiffs claim made pur *287 suant to Labor Law § 240. They similarly oppose plaintiffs request for relief pursuant to CPLR 2004.
Additionally, defendant 45 Broadway cross-moves for summary judgment dismissing plaintiffs claims in negligence and Labor Law § 200. Defendant 45 Broadway contends that the admissible evidence adduced leaves no issue of fact to be decided and that it was merely a passive owner which did not contract for any construction services. 45 Broadway further argues there was no evidence that it in any way directed or controlled the performance of the work during the renovation.
All of the defendants oppose the granting of plaintiffs motion, contending that since plaintiff Rodriguez did not fall from the ladder, he is not entitled to the protections offered by Labor Law § 240 (1). Defendants argue that the contemplated hazards covered by Labor Law § 240 (1) do not include any and all perils that may be connected tangentially to the effects of gravity, but rather were limited to specific gravity-related accidents, which result in someone falling from a height or being struck by a falling object.
Furthermore, defendants oppose the granting of plaintiffs motion for relief pursuant to section 2004, arguing that plaintiff has no reasonable excuse for the untimeliness of his EBT errata sheet; that the new description of the accident contained in the errata sheet substantially alters plaintiffs claim; and that defendants would be prejudiced thereby. Defendants, in essence, assert that these “corrected” facts not only greatly alter the theory of this case, but were belatedly tailored by plaintiff in a disingenuous effort to comply with the gravity-related requirement of section 240 (1). Defendants also contend that this subsequent alteration in and of itself creates a sufficient question of fact to warrant a denial of plaintiffs motion for summary judgment.
Motion For Summary Judgment
The proponent of a motion for summary judgment carries the initial burden of production of evidence as well as the burden of persuasion. CAlvarez v Prospect Hosp., 68 NY2d 320 [1986].) Thus, the moving party must tender sufficient evidence to demonstrate as a matter of law the absence of a material issue of fact. Once that initial burden has been satisfied, the “burden of production” (not the burden of persuasion) shifts to the opponent, who must now go forward and produce sufficient evidence in admissible form to establish the existence of a triable issue of fact. The burden of persuasion, however, *288 always remains where it began, i.e., with the proponent of the issue. Thus “if the evidence on the issue is evenly balanced, the party that bears the burden of persuasion must lose.” (Director, Off. of Workers’ Compensation Programs, Dept, of Labor v Greenwich Collieries, 512 US 267, 272; 300 E. 34th St. Co. v Habeeb, 248 AD2d 50 [1st Dept 1997].)
The court’s function on this motion for summary judgment is issue finding rather than issue determination. (Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395 [1957].) Since summary judgment is a drastic remedy, it should not be granted where there is any doubt as to the existence of a triable issue. (Rotuba Extruders v Ceppos, 46 NY2d 223 [1978].) Thus, when the existence of an issue of fact is even arguable or debatable, summary judgment should be denied. (Stone v Goodson, 8 NY2d 8 [I960]; Sillman v Twentieth Century-Fox Film Corp., supra.)
Motion Pursuant To CPLR 2004 and 3116
CPLR 3116 (a) specifies a 60-day period to make corrections to a deposition. It states, “If the witness fails to sign and return the deposition within sixty days, it may be used as fully as though signed. No changes to the transcript may be made by the witness more than sixty days after submission to the witness for examination.” However, CPLR 2004 provides that, “the court may extend the time fixed by any statute, rule or order for doing any act, upon such terms as may be just and upon good cause shown, whether the application for extension is made before or after the expiration of the time fixed.”
In Binh v Bagland USA (286 AD2d 613, 614 [1st Dept 2001]), the Appellate Division held that, a trial court “properly exercised its discretion in forgiving plaintiffs [three-month] delay in furnishing the errata sheet” correcting deposition testimony, and ruled that the “conflict between the original deposition testimony and the errata sheet raised an issue of credibility inappropriate for summary judgment treatment.” Additionally, in Cillo v Resjefal Corp. (295 AD2d 257 [1st Dept 2002]), the Appellate Division found that a witness may make substantive changes to his or her deposition testimony provided the changes are accompanied by a statement of the reasons therefor.
In the instant case, plaintiff caused a 47-day delay in furnishing his errata sheet with corrections. However, the changes in plaintiff’s errata sheet were accompanied by a statement explaining the reason for each change as required by CPLR *289 3116; and. the court concludes therefore that plaintiffs request for an extension of time pursuant to CPLR 2004 is warranted; and hereby grants same.
Motion To Dismiss
CPLR 200 and Common-Law Negligence
Labor Law § 200 is a codification of the common-law duty of an owner or employer to provide employees with a safe place to work (see, Jock v Fien, 80 NY2d 965 [1992]). Liability under Labor Law § 200 cannot be imposed unless plaintiff establishes that the owner or general contractor supervised or controlled the work performed or had actual or constructive notice of the unsafe condition which precipitated plaintiffs injury (see, Comes v New York State Elec. & Gas Corp., 82 NY2d 876; Murray v South End Improvement Corp., 263 AD2d 577, 578 [3d Dept 1999]; Butigian v Port Auth. of N.Y. & N.J., 266 AD2d 133 [1st Dept 1999] [no evidence that owner or tenant exercised supervisory control over plaintiffs work]).
It is clear in the case at bar that the owner 45 Broadway did not engage in any supervision or control over the activities of the general contractor. Defendant 45 Broadway was the building owner, which signed the lease agreement with tenant defendant Qwest, with respect to the 26th floor of the premises. Qwest subsequently contracted with OD&P for build out of the space. There was insufficient evidence presented by plaintiff, as a matter of law, to rebut 45 Broadway’s argument that it did not exercise sufficient control of the activities of the general contractor to justify the imposition of liability. Defendant’s motion is therefore granted both with respect to plaintiffs Labor Law § 200 claim and to his claim for common-law negligence.
Motion For Indemnification
The court finds that defendant 45 Broadway’s request for leave to submit a motion for summary judgment for common-law or contractual indemnification is premature. In addressing this issue, this court has followed the reasoning and analysis provided by Correia v Professional Data Mgt. (259 AD2d 60, 65 [1st Dept 1999]), where the Appellate Division stated a party seeking common-law “indemnity must prove not only that it was not guilty of any negligence beyond the statutory liability but must also prove that the proposed indemnitor was guilty of some negligence that contributed to the causation of the accident for which the indemnitee was held liable to the injured *290 party by virtue of some obligation imposed by law.” Correia (at 64) went on to further say, “a party who has been held liable to an injured worker solely on the basis of the statutory liability imposed by [the scaffolding law], without any fault on its part, is entitled to recover under a contract of indemnity.” It appears clear therefore that 45 Broadway’s request is premature, since it must first resolve the issue of initial liability among the other parties before the above-stated principles of indemnification can be triggered.
Law Relating To Labor Law § 240
It is well settled that Labor Law § 240 (1) imposes on all contractors, owners and their agents liability for damages to workers who are injured in the course of their employment in the building and renovation trades when an elevation-related hazard is a proximate cause of an injury. Section 240 (1) of the Labor Law requires that:
“All contractors and owners and their agents * * * who contract for but do not direct or control the work, in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed.” (Emphasis added.)
Owners and contractors who fail to provide workers with these adequate and reliable height-related safety devices for use in the performance of such work are responsible under a strict liability theory to any worker who is injured as a result of a violation. (See, Zimmer v Chemung County Performing Arts, 65 NY2d 513 [1985].) Therefore, although a plaintiff is not required to prove negligence on the part of the defendant owner, contractor or subcontractor in order to sustain his claim under Labor Law § 240, he must demonstrate that he was subjected to an elevation-related risk which the statute was designed to obviate and that there was a causal connection between a violation of the statute and the injury sustained. Thus, not all injuries sustained while working at a height are covered. As stated by the Court of Appeals in Gordon:
“Labor Law § 240 (1) was designed to prevent those types of accidents in which the scaffold, * * * lad *291 der or other protective device proved inadequate to shield the injured worker from harm directly flowing from the application of the force of gravity to an object or person. The right of recovery afforded by the statute does not extend to other types of harm even if the harm in question was caused by an inadequate, malfunctioning or defectively designed scaffold.” (Gordon v Eastern Ry. Supply, 82 NY2d 555, 561 [1993] [emphasis added].)
Thus, three elements appear necessary, i.e., an inadequate safety device, which then triggers the force of gravity, and a causal connection between each of these elements, and the injury.
In Ross v Curtis-Palmer Hydro-Elec. Co. (81 NY2d 494, 501), upon which defendants rely, the plaintiff was denied recovery although he injured his back while working in an awkward position on an unsafe scaffold. The Court of Appeals (at 501) held that plaintiff was not entitled to recovery under section 240 (1) because “however unsafe the * * * scaffold may have been * * * it cannot be said that the device did not serve the core objective of Labor Law § 240 (1) — preventing plaintiff from falling.” In other words, one essential element was missing in Ross, i.e., the force of gravity as a contributing cause of the injury.
In Narducci v Manhasset Bay Assoc. (96 NY2d 259 [2001]), the Court of Appeals reviewed two cases* in which each plaintiff worker was injured by a falling object while standing and working on a ladder. In neither case did the plaintiff fall from the ladder. Although, acknowledging that section 240 (1) “applies to both Tailing worker’ and Tailing object’ cases,” the Court (at 267, 269) held that neither worker was entitled to the benefits of section 240 because in neither case was it demonstrated that the ladder was inadequate or that there was any “legally sufficient causal connection [of the ladder] to the injury.” In each Narducci case, although the force of gravity played a part, there was no causal connection between inadequate safety device and the injury. In both of the Narducci cases it was not a nonfunctioning safety device that caused the *292 object to fall. Each of the falling objects were clearly general hazards of the workplace, but not hazards contemplated to be subject to Labor Law § 240 (1). Thus the Court opined:
“Not every worker who falls at a construction site, and not every object that falls on a worker, gives rise to the extraordinary protections of Labor Law § 240 (1). Rather, liability is contingent upon the existence of a hazard contemplated in section 240 (1) and the failure to use, or the inadequacy of, a safety device of the kind enumerated therein.” (Narducci v Manhasset Bay Assoc., 96 NY2d 259, 267 [emphasis added].)
There is a significant body of law in the Third Department of the Appellate Division which holds, based on Gordon, Ross and Narducci (supra), that in the absence of a fall, there can be no recovery under section 240 (1) even though an inadequate safety device, like a ladder, is a proximate cause of an elevation-related injury to a worker. (See, e.g., Kelleher v Power Auth., 211 AD2d 918 [3d Dept 1995], and its progeny; see also, Tolino v Speyer, 289 AD2d 4 [1st Dept 2001].) In Kelleher (supra), the plaintiff was on a ladder operating a rotary compression drill. When the ladder “shifted a few inches * * * plaintiff moved his left hand to steady himself [and] the strap on his gloved hand was caught pulling his hand into the drill and causing injury * * * ” (at 918). It would appear that an inadequate safety device and the force of gravity did play a part since plaintiff was injured while “steadying himself.” However, citing Ross, the Third Department held that: “[T]he injury sustained by plaintiff was not an elevation-related risk of the type intended to be covered by Labor Law § 240 (1) and under the facts of this case and in the absence of a fall, we find that plaintiffs’ action does not come within Labor Law § 240 (1).” (211 AD2d at 919-920 [emphasis added].) Kelleher was cited with approval, in Tolino (supra), when under similar circumstances, the injury was also held by the First Department not to be “gravity related.” In Tolino (at 4-5) plaintiff had alleged that “he was standing on a wobbly platform when his finger became wedged between a piece of sheetrock he was installing and the ceiling.” Tolino, however, can be distinguished from Kelleher. In Kelleher the plaintiff was denied relief despite the nexus between the inadequate safety device and gravity (the shifting ladder) and the injury. However, in Tolino there was apparently no allegation and/or no finding that the “wobbly platform” was a proximate cause of the injury to plaintiff’s *293 fingers. Therefore, in the “absence of a fall,” the wobbly ladder and the injury to the finger appear merely coincidental. This fine distinction between Kelleher and Tolino only becomes clear from a reading of Pesca v City of New York {infra). There, the First Department was recently required to review and determine whether, in the absence of a fall, section 240 (1) would afford protection to an injured worker. The Appellate Division observed that: “Although plaintiff did not fall from the ramp, the injuries he allegedly sustained in preventing himself from falling may be compensable under Labor Law § 240 (1) ¿/shown to have resulted from a failure to provide a proper safety device in accordance with the requirements of the statute.” {Pesca v City of New York, 298 AD2d at 293 [1st Dept 2002] [emphasis added].) This court notes that the First Department in Pesca cited neither Kelleher, nor its prior decision in Tolino. The failure to cite and/or distinguish these cases clearly signals an intention by the First Department to distance itself from this judicially imposed “fall” requirement. It would now appear that, in the First Department at least, a fall from a section 240 safety device is not the sine qua non for the protections afforded by the Labor Law.
Discussion and Conclusion
This court agrees with the rationale expressed in Pesca {supra). Suppose for example that the ladder collapsed beneath plaintiffs feet and he injured himself while hanging from the ceiling. Should plaintiff be denied relief simply because he failed to fall to the ground? That would be carrying the words of Ross, Narducci and Gordon to an irrational conclusion and one, which in the opinion of this court, is inconsistent with the legislative intent. Thus, although plaintiff in the instant case did not fall off the ladder, he may be entitled to the protections of the Labor Law even if a jury accepts that the plaintiff only lost his balance and was injured, even in the absence of a fall, because of the inadequacy of the ladder and its placement. Under this scenario both the inadequate safety device and gravity would be “sufficiently causally related to the injury.”
The court rejects defendant’s argument that only a fall from the ladder would qualify a worker for the protection offered by section 240 (1). Defendant’s reliance in that regard on Ross {supra) and its progeny is misplaced. Labor Law § 240 (1) “is to be construed as liberally as may be for the accomplishment of the purpose for which it was framed.” (Koenig v Patrick Constr. Corp., 298 AD2d 313, 319.) A ladder is one of the safety devices *294 specifically mentioned in section 240 (1) and that section mandates that such ladder “shall be so constructed, placed and operated as to give proper protection to a person so employed.” (Emphasis added.) A worker who is injured while preventing himself from falling from a shaky ladder has, in the opinion of this court, been subjected to a gravity-related risk since he has not been provided with “proper protection” from this type of elevation-related hazard. When such an elevation-related hazard is a proximate cause of a worker’s injury, absolute liability should be imposed.
In any event, summary judgment must still be denied since plaintiffs “changes [to the deposition] raise issues of credibility that * * * should be left for trial” (Cillo v Resjefal Corp., 295 AD2d 257, 257 [1st Dept 2002]). The maxim “falsus in uno, falsus in omnibus” has applicability here, and a jury is clearly authorized “to disregard completely the entire testimony of the [plaintiff] * * * or accept so much of [plaintiffs] testimony as [they] deem true and disregard what [they] feel is false.” (See PJI3d 1:22.)
Conclusion
The court grants plaintiffs request for relief pursuant to CPLR 2004 and 3116. The court, however, denies plaintiffs motion for summary judgment pursuant to Labor Law § 240 (1).
The court denies defendants’ cross motion for summary judgment pursuant to Labor Law § 240 (1), but, however, grants defendant 45 Broadway’s motion for summary judgment pursuant to Labor Law § 200 and common-law negligence.

 One plaintiff in this case was injured by a falling piece of glass and in the other case plaintiff was injured by a light fixture which fell. In each case the Court of Appeals held that this type of accident was not protected by Labor Law § 240, because the injury sustained by the plaintiff was not related to the failure of a safety device used to prevent harmful effects of gravity on an object or a person.