■ GLENBRIAR Co., Appellant, v S. LEE LIPSMAN et al., Respondents. [783 NYS2d 546]—

Order, Appellate Term of the Supreme Court, First Department (Lucindo Suarez, J., Phyllis Gangel Jacob, J., concurring; William P. McCooe, J.P., dissenting), reversing a judgment of Civil Court, Bronx County (Brenda Spears, J.), entered May 16, 2001, which had awarded petitioner landlord possession, and granting respondent tenants final judgment of possession dismissing the petition, affirmed, without costs.

Forty-five years ago, in 1959, Lillian Lipsman and her husband moved into apartment A211 at 4555 Henry Hudson Parkway in Bronx County, New York. Since that time, they have lived in and called that apartment home. The couple raised two children in apartment A211. It remains fully furnished, has never been sublet, and contains Mrs. Lipsman's most important personal effects, including her clothing, her family china and her photo albums.

In 1995, because Mr. Lipsman has emphysema, which is exacerbated by the cold, the Lipsmans jointly purchased a $20,000 condominium in West Palm Beach, Florida with their son Howard and his wife Elizabeth. The elder Lipsmans, both of whom are over 80 years old, now spend winter months in Florida and return to New York every spring. For tax reasons, Mr. Lipsman has adopted the Florida condominium as his primary residence, but Mrs. Lipsman continues to maintain her primary residence in New York. Unlike her husband, Mrs. Lipsman maintains ongoing relationships with her doctors in New York. Also, she is registered with Social Security in New York, and has at least three active bank accounts in New York. She continues to vote in New York elections.

By this summary proceeding, the landlord seeks to evict the Lipsmans from their Bronx apartment, on the ground that it is

not their primary residence. We agree with the majority and the concurrence at the Appellate Term that the landlord did not meet its burden of proving, by a preponderance of the evidence, that Mrs. Lipsman maintains her primary residence in Florida. The evidence at trial, which included testimony from five witnesses, including Mrs. Lipsman herself, establishes that Mrs. Lipsman resides in New York for approximately six months each year, and has maintained an ongoing, "substantial physical nexus" with her apartment in New York "for actual living purposes" (*see Village Dev. Assoc. v Walker*, 282 AD2d 369 [2001]; *23 Jones St. Assoc. v Keebler-Beretta*, 284 AD2d 109 [2001]; *Four Winds Assoc. v Rachlin*, 248 AD2d 352 [1998]). Although there were discrepancies in the trial testimony as to the exact dates that Mrs. Lipsman travels to and from Florida each year, none of the witnesses contested the fact that Mrs. Lipsman divides her time equally between New York and Florida.

It is uncontested that the Lipsmans have lived in the Bronx apartment for over 45 years, and that they raised their children in that apartment (*see 615 Co. v Mikeska*, 75 NY2d 987 [1990] [appropriate for court to evaluate entire history of tenancy in considering issue of primary residence]; *Four Winds Assoc.*, 248 AD2d 352 [1998], *supra*). Denial of a renewal lease would undeniably have a devastating impact not only for Mrs. Lipsman, but also for her family, whose lives are rooted there, and who still come back to their childhood home to visit.

While Mr. Lipsman may have prepared joint tax returns for the couple listing the Florida address as a primary residence, this fact should not be considered fatal to Mrs. Lipsman's claim of primary residency in New York, as "a tenant's address as designated on her tax return is merely one of many factors to be considered in determining primary residence; it is not a controlling factor" (*Village Dev. Assoc.*, 282 AD2d 369 [2001], *supra*, citing 9 NYCRR 2200.3 [j]); *see also 300 E. 34th St. Co. v Habeeb*, 248 AD2d 50, 55 [1997]; *West 157th St. Assoc. v Sassoonian*, 156 AD2d 137, 139 [1989]). In addition, although Mr. Lipsman applied for a homestead tax exemption on the Florida apartment, and Mrs. Lipsman, who did not sign the form, is listed as a "co-applicant," Mr. Lipsman states on this form that his marital status is "single." It is of note that Mr. Lipsman also specifically declares that his wife is a resident of New York. Mr. Lipsman's attempts to reduce his tax liability by changing the state of his primary residence should not inure to the detriment of his wife. Mrs. Lipsman has kept a consistent presence at the Bronx apartment, and has continually maintained it as her primary residence. It is well settled that a husband and wife may

establish two separate primary residences without penalty (*see Matter of Rose Assoc. v State Div. of Hous. & Community Renewal*, 121 AD2d 185, 187 [1986], *lv denied* 69 NY2d 601 [1986]). The fact that the Lipsmans may have what has been referred to as a "conventional" marriage does not deprive them of the right to declare separate primary residences under law.

Further, as aptly stated in the Appellate Term decision, "this case presents a not uncommon 'snowbird' situation" where an elderly tenant purchases a Florida property for use during the winter and/or for vacations. (2002 NY Slip Op 50225[U], *3.) However, the decision to spend winters in Florida with her husband, should not, under the circumstances, have the corollary effect of causing Mrs. Lipsman to forfeit her principal residence of long standing in New York. Concur—Mazzarelli, J.P., Andrias and Ellerin, JJ.

Friedman and Gonzalez, JJ., dissent in a memorandum by Friedman, J., as follows: In this summary proceeding, landlord seeks to establish its entitlement to refuse to renew tenants' rent-stabilized lease of a Bronx apartment. Landlord contends that it was entitled to refuse to renew the lease, under Rent Stabilization Code (9 NYCRR) § 2524.4 (c) because tenants S. Lee Lipsman and Lillian Lipsman, a retired married couple, have relocated to their jointly-owned condominium in West Palm Beach, Florida, and no longer occupy the Bronx apartment as their primary residence. Although tenants admit that Mr. Lipsman (motivated by tax considerations) has switched his primary residence to Florida, Mrs. Lipsman continues to claim the Bronx apartment as her primary residence. Whether this was actually the case was the issue tried by Civil Court. That court, after reviewing all the evidence, and—unlike this Court and Appellate Term—having had the opportunity to assess each witness's credibility based on observation of that witness's trial testimony, made the factual determination that Mrs. Lipsman, like her husband, no longer maintains her primary residence at the Bronx apartment. In my view, that determination is fully supported by the record, and the judgment based thereon, which Appellate Term reversed, should be reinstated. Accordingly, I respectfully dissent.

At trial, both the probative documentary evidence and crucial admissions of tenants themselves supported landlord's position. Such evidence pointed unmistakably to the Florida apartment as the primary residence of both Mr. and Mrs. Lipsman. In this regard, the record establishes, among other things, the following uncontroverted facts: Tenants' federal joint income tax returns for 1998 and 1999 set forth the Florida apartment as

their home address. Tenants successfully applied for a homestead tax exemption on their Florida apartment in 1999, a benefit available under Florida law only to property used as a permanent residence (*see* Fla Stat Ann § 196.031 [1]).[1] Both tenants have ceased filing New York State income tax returns. Mrs. Lipsman, who does not drive, primarily relies for transportation on Mr. Lipsman, who has surrendered his New York driver's license, currently possesses a Florida driver's license, and registers his automobile in Florida. Tenants do not have a telephone answering machine at the Bronx apartment, but do have a telephone answering machine at the Florida apartment. Mrs. Lipsman's voice is on the outgoing message of the Florida apartment's telephone answering machine. While tenants do not have cable television service at the Bronx apartment, they do have such service at the Florida apartment.

In the face of the foregoing evidence, tenants offered their own testimony, and that of their son, their daughter-in-law, and a neighbor, to the effect that Mrs. Lipsman lives at the Bronx apartment for a substantial portion of each year. Tenants failed, however, to offer any travel records to substantiate this testimony. Further, tenants and their witnesses gave testimony that was notably vague and inconsistent concerning the timing of Mrs. Lipsman's leaving and returning to the Bronx each year. For example, although Mrs. Lipsman claimed that she does not depart New York for Florida until late November, the records of the New York City Board of Elections show that she voted by absentee ballot in the general elections held on November 4, 1997, and November 3, 1998. Meanwhile, Mr. Lipsman testified that he and his wife leave New York in December; the daughter-in-law testified that tenants leave New York in October; and the neighbor testified that tenants leave New York in early November.[2]

There are also indications in the record that tenants and

---

1. While the record does not reflect that Mrs. Lipsman actually signed the application for the homestead tax exemption, the application is made in her name as well as Mr. Lipsman's name. Moreover, it bears emphasis that Mr. and Mrs. Lipsman concede that they live together for the entire year, with the exception of only one week. That the homestead application indicates that the applicant has a "single" marital status is of no moment, since it is undisputed that the Lipsmans have been married since 1944; presumably, the marking of the "single" box on the application was an inadvertent error. To the extent this inaccurate response might have been intentional, it is troubling that the majority appears to condone it.

2. Although the majority states in support of its position that "Mrs. Lipsman maintains ongoing relationships with her doctors in New York," the only support for this assertion appears to be an unsworn statement Mrs. Lipsman made at the conclusion of trial, after she had been excused from the witness

their witnesses may have tailored their testimony in light of tenants' understanding (based on their son's advice) that Mrs. Lipsman was required to live at the Bronx apartment for 183 days of each year to satisfy the "primary residence" requirement. For example, Mr. Lipsman testified at his deposition that he spent seven months in Florida during calendar year 1999, and that he and his wife spent only one week apart from each other during that year. At trial, when landlord's counsel pointed out to Mr. Lipsman that his deposition testimony led to the conclusion that Mrs. Lipsman spent 203 days—more than six months—in Florida during 1999, Mr. Lipsman claimed that his reference to seven months at the deposition really meant "six months and one week, or something of that nature."

It is well established that findings of fact rendered by a court after a bench trial "should not be disturbed upon appeal unless it is obvious that the court's conclusions could not be reached under any fair interpretation of the evidence, especially when the findings of fact rest in large measure on considerations relating to the credibility of witnesses" (*Thoreson v Penthouse Intl.*, 80 NY2d 490, 495 [1992] [citations and internal quotation marks omitted]). This principle applies as much to Civil Court as it does to Supreme Court (*see Claridge Gardens v Menotti*, 160 AD2d 544, 544-545 [1990]), and requires us to reverse Appellate Term and reinstate the determination of Civil Court where Appellate Term has set aside Civil Court's well-supported fact-findings (*see Williams v Roper*, 269 AD2d 125, 126 [2000], *lv dismissed* 95 NY2d 898 [2000]; *300 E. 34th St. Co. v Habeeb*, 248 AD2d 50, 54 [1997]). Although this Court and Appellate Term enjoy broad power to review the facts, "due regard must be given to the decision of the Trial Judge who was in a position to assess the evidence and the credibility of the witnesses" (*id.* at 55, quoting *Universal Leasing Servs. v Flushing Hae Kwan Rest.*, 169 AD2d 829, 830 [1991]).

The majority, in affirming Appellate Term, identifies nothing

---

stand. At the conclusion of Mr. Lipsman's testimony, the court asked tenants' counsel if she had any other witnesses to call. Before counsel responded, Mrs. Lipsman (who had testified before her husband) interjected that another reason she wished to keep the Bronx apartment was that she continued to see an unidentified "eye doctor" in New York for her glaucoma condition. After Mrs. Lipsman finished making her statement, her lawyer—who evidently chose not to inquire about this matter in her examination of Mrs. Lipsman—said: "That's my client's addition, Your Honor." Presumably, Mrs. Lipsman, as a person of advanced years, has physicians in each place where she resides for a substantial period of time. Therefore, her statement concerning her New York "eye doctor" — aside from the matter of its being unsworn, and not responsive to any question—should be given little, if any, weight in our analysis.

in the record that justifies a departure from the foregoing principles to set aside Civil Court's well-supported factual determination that Mrs. Lipsman's primary residence is now the Florida apartment. Civil Court, which actually observed tenants and their witnesses testify at trial, was best situated to assess the credibility of the testimony given by such witnesses, and to weigh that testimony—almost all of which was self-serving—against the more objective documentary evidence and admissions adduced by landlord. Further, tenants' failure to offer records of their travels between New York and Florida in support of their case provides a powerful inference in support of Civil Court's findings.

Indeed, tenants' own testimony supports Civil Court's determination that Mrs. Lipsman did not maintain a separate primary residence at the Bronx apartment. Specifically, both tenants testified that they only spend one week apart from each other each year, and that Mrs. Lipsman relies on her husband both for transportation and to deal with financial matters. While spouses are certainly entitled to maintain separate primary residences, Civil Court's determination that the Lipsmans did not do so in this case plainly constitutes a "fair interpretation" of the Lipsmans' own testimony. As the dissenting Appellate Term Justice aptly observed: "Finding separate primary residences would produce an inconsistent result where the evidence as to residence is substantially the same as to both tenants who are united in a long term conventional marriage." (2002 NY Slip Op 50225[U], *12.)

It is, of course, entirely proper for retired New Yorkers who spend their winters in warmer regions to maintain their primary residences in New York. I see no reason, however, for this Court and Appellate Term to reach out to overturn the well-supported fact findings of a trial court in order to accommodate a course of conduct aimed at obtaining mutually exclusive benefits from different jurisdictions. To reiterate, at the same time Mr. Lipsman claims primary residence in Florida in order to take advantage of certain tax benefits (including avoidance, for both Mrs. Lipsman and himself, of New York State and City income tax), Mrs. Lipsman, who lives with Mr. Lipsman essentially on a year-round basis, claims primary residence in New York in order to hold on to a rent-stabilized tenancy. While the majority correctly states that the address on a tenant's tax return is not necessarily determinative of the primary residence issue (see 9 NYCRR 2200.3 [j]), I believe that the address the tenant uses for tax purposes should be given greater weight where, as here, it is being used to avoid paying New York State

and City income tax at the same time the tenant claims, for purposes of the Rent Stabilization Code, to maintain his or her primary residence in New York City.

Of course, we all sympathize with the Lipsmans' desire to maintain, at below-market cost, a connection with the home where they raised their children. The Rent Stabilization Code, however, was not intended to facilitate the pursuit of such a goal. Certainly, rent regulation was not instituted for the purpose of subsidizing adults, such as the Lipsmans' grown children, who, as the majority puts it, wish to "come back to their childhood home to visit." Again, by no means do I deprecate the desire of the Lipsmans and their children to maintain a connection with the Lipsmans' Bronx apartment; I merely observe that the rent regulation laws were intended to further other, more socially pressing concerns, namely, the shortage of affordable housing in New York City. It only exacerbates that problem to allow a tenant, who is not occupying an apartment as a primary residence, to use the rent regulation laws to keep that residence off the general housing market.

On this record, Civil Court could fairly conclude that Mrs. Lipsman is not entitled to the protection of the Rent Stabilization Code because she "seeks to retain the stabilized apartment for convenience or for considerations of personal gain" (*Cier Indus. Co. v Hessen*, 136 AD2d 145, 150 [1988] [Ellerin, J.]; *accord Park Towers S. Co. v Universal Attractions*, 274 AD2d 312 [2000]; *Rima 106, L.P. v Alvarez*, 257 AD2d 201, 206 [1999]). Stated otherwise, the record offers ample support to Civil Court's conclusion that Mrs. Lipsman's claim to the Bronx apartment "is based on less than the need for a place to call home" (*Cox v J.D. Realty Assoc.*, 217 AD2d 179, 185 [1995], quoting *Park S. Assoc. v Mason*, 123 Misc 2d 750, 753 [1984], *affd* 126 Misc 2d 945 [1984]). Since the majority here, like the majority at Appellate Term, fails to demonstrate any error in Civil Court's findings of fact, I would reverse Appellate Term's order and reinstate Civil Court's final judgment of possession in favor of landlord. [*See* 2002 NY Slip Op 50255(U).]