■ AGCO Corporation, Plaintiff, v Northrop Grumman Space & Mission Systems Corporation et al., Respondents, and LucasVarity Automotive Holding Company et al., Appellants. [878 NYS2d 20]—

Order, Supreme Court, New York County (Helen E. Freedman, J.), entered June 12, 2008, which denied defendants' motions for summary judgment, and order, same court and Justice, entered July 28, 2008, which found that any indemnification obligations to plaintiff would be owed by the TRW defendants rather than by the Northrop Grumman defendants, unanimously affirmed, with costs.

In the master purchase agreement (MPA) at issue, which is governed by Delaware law, defendant TRW agreed to assume all "Automotive Liabilities," which are defined as "all Liabilities arising primarily from the conduct of the Automotive Business . . . including . . . any such Liabilities arising out of or related to asbestos-related product liability Claims or Liabilities." "Automotive Business" is defined as "the business of designing, manufacturing and selling steering, suspension, braking, engine, safety, electronic, engineered fastening and other components and systems for passenger cars, light trucks and commercial vehicles." The parties agree that tractors are neither "passenger cars" nor "light trucks," but disagree as to whether they are "commercial vehicles."

The court properly denied the summary judgment motions of both sets of defendants. Contrary to their claims, the MPA is ambiguous because "the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings" (*Rhone-Poulenc Basic Chems. Co. v American Motorists Ins. Co.*, 616 A2d 1192, 1196 [Del 1992]). Ordinarily, a reference to "passenger cars, light trucks and commercial vehicles" would not evoke tractors. TRW's argument that "commercial vehicle" does not include a tractor is thus reasonable. However, the MPA says "Schedule 5.9 to the Northrop Grumman Disclosure Letter sets forth a list of all pending lawsuits . . . that relate to the Automotive Business," and that includes seven Massey Ferguson asbestos lawsuits. Therefore, Northrop Grumman's argument that those asbestos claims are automotive liabilities (i.e., "all Liabilities arising primarily from the conduct of the Automotive Business") is also reasonable.

If a contract is ambiguous, a court can consider extrinsic evidence in determining the parties' intent (*see e.g. Northwestern Natl. Ins. Co. v Esmark, Inc.*, 672 A2d 41, 43 [Del 1996]). However, after looking at the extrinsic evidence submitted by the parties, we find that neither side's "cause of action or defense" was "established sufficiently to warrant the court as a matter of law in directing judgment in favor of [that] party" (CPLR 3212 [b]). For example, Northrop Grumman relies heavily on schedule 5.9, but TRW submitted evidence showing that the schedule contained mistakes and was not drafted specifically for the MPA. The parties' history of accepting Massey Ferguson claims is not determinative; each side accepted some tenders, and the MPA contains a nonwaiver clause.

Turning to the later decision after hearing, we note that a fact-finding court's decision "should not be disturbed upon ap-

peal unless it is obvious that the court's conclusions could not be reached under any fair interpretation of the evidence" (*Claridge Gardens v Menotti*, 160 AD2d 544, 545 [1990], quoted in *Thoreson v Penthouse Intl.*, 80 NY2d 490, 495 [1992]). The court's conclusion that the indemnification obligations claimed by plaintiff are owed, if at all, by the TRW defendants can be reached under a fair interpretation of the evidence.

The purpose of contract interpretation is "to give effect to the intention of the parties" (*Northwestern*, 672 A2d at 43). The parties to the MPA were defendant Northrop Grumman Corporation and nonparty BCP Acquisition Company. (It is true that defendant TRW Automotive Inc. and nonparty TRW Inc. became parties to the MPA on December 20, 2002. However, the provisions of the MPA at issue on this appeal did not change materially between the original November 18, 2002 contract and the second amendment on February 28, 2003.) The Northrop Grumman defendants submitted the deposition testimony of Malcolm Swift, who was intimately involved in the negotiations for the Northrop Grumman-BCP deal. By contrast, the TRW defendants did not submit the testimony of anyone involved in the MPA negotiation. Swift's testimony about the intent of the parties to the MPA, while arguably self-serving, was nonetheless uncontradicted, and lends support to the IAS court's decision. This is consistent with the testimony of one of the TRW defendants' in-house lawyers that when potential purchasers of TRW's automotive business did due diligence, she included Massey Ferguson in her disclosure of asbestos liability.

The TRW defendants contend the IAS court's decision is contradictory because it found tractors were not commercial vehicles, but also found TRW was responsible for the asbestos claims arising from Massey Ferguson tractors. However, "[c]ontracts must be construed as a whole" (*id.*). Too narrow a focus on words like "commercial vehicle" would be mistaken (*see e.g. OSI Sys., Inc. v Instrumentarium Corp.*, 892 A2d 1086, 1092 n 19 [Del Ch 2006]). The ultimate issue is whether Massey Ferguson asbestos liabilities are automotive liabilities. There was sufficient evidence on which the IAS court could conclude they were. Concur—Gonzalez, P.J., Mazzarelli, Saxe, Moskowitz and Richter, JJ. [*See* 2008 NY Slip Op 31608(U).]