Catterson, J.
(dissenting). I must respectfully dissent. As a threshold issue, the majority has applied an incorrect standard of review in holding in its opening paragraph that “the landlord has not established by preponderant evidence” that the tenant did not use the subject apartment as her primary residence. The generally accepted standard for appellate review in a nonprimary residence action is whether “it is obvious that the [fact-finding] court’s conclusions could not be reached under any fair interpretation of the evidence.” (Claridge Gardens v Menotti, 160 AD2d 544, 545 [1st Dept 1990]; see also 542 E. 14th St. LLC v Lee, 66 AD3d 18, 22 [1st Dept 2009]; AGCO Corp. v Northrop Grumman Space & Mission Sys. Corp., 61 AD3d 562, 563-564 [1st Dept 2009].) Here, the majority’s analysis does not depend on showing why it is obvious that “any fair interpretation of the evidence” cannot lead to the determination reached by Civil Court and affirmed by Appellate Term. Instead, it simply substitutes its own different interpretation of evidence such as the tenant’s credit card transactions in Vermont and “negligible” electric usage at the subject apartment.
In any event, and for the reasons set forth in greater detail below, I also disagree if the majority, by holding that the landlord did not establish the tenant’s nonprimary use of the apartment by “preponderant evidence,” means that the landlord did not satisfy its initial burden. In addition to the documentary evidence of the tenant’s credit card transactions and “negligible” electric usage, two of the four statutory factors that may be weighed as evidence of nonprimary use point in favor of the landlord’s position. Moreover, the tenant failed to rebut this documentary evidence with objective, empirical proof that she maintained a “substantial nexus” to the subject premises during the relevant period. Specifically, the testimony of her witnesses, who were other residents of the building, does not comport with the type of testimony that has been accepted by this Court to establish primary residence use of a rent-stabilized apartment. For example, the testimony of a tenant on which the majority relies and which includes the statement that the respondent tenant “would never be away from my purview” cannot be accepted as credible, but only as meaningless and useless hyperbole.
The record reflects that the tenant occupied a rent-stabilized apartment, owned by landlord, located on East 6th Street in Manhattan since 1980. Since 1989, she has also owned a residence in Vermont where her long-time companion resides permanently. In September 2006, the landlord served a notice of *125 non-renewal on the tenant on the ground she had not used the apartment as her primary residence in 2004-2006. By holdover petition, the landlord sought a final judgment of possession on nonprimary residence grounds. The tenant denied the allegation, and a nonjury trial was held in December 2007.
The Civil Court found in favor of the landlord, basing its decision primarily on the tenant’s bank and credit card transactions. The court determined the tenant’s location by counting the days between two Vermont transactions as time spent in Vermont, and days between two New York transactions as time spent by the tenant in New York. Accordingly, the court found that the tenant spent 45% of the relevant period in New York, and the remaining 55% in Vermont. Thus, the court concluded that the tenant resided in New York less than 183 days per calendar year. It also noted that the tenant owned a vehicle that was registered in Vermont, and the tenant held a Vermont driver’s license. The court refused to credit testimony from witnesses regarding the tenant’s “continual” presence in New York on the ground that neither the witnesses nor the tenant were able to identify specific dates or point to specific blocks of time when the tenant was in New York. Appellate Term affirmed, holding that a “fair interpretation of the evidence” supported the Civil Court’s determination. (27 Misc 3d 126[A], 2010 NY Slip Op 50511[U], *1 [2010].) The Appellate Term focused on the “negligible” electric usage in the New York apartment and the Vermont address used by the tenant for her driver’s license and vehicle registration. The Appellate Term also found it significant that the tenant’s long-time companion resided at the Vermont house, and that the tenant acknowledged she spent a “substantial” amount of time at the Vermont residence.
For the reasons set forth below, I would affirm. As previously noted, it is well settled that in nonprimary residence actions, “the decision of the fact-finding court should not be disturbed upon appeal unless it is obvious that the court’s conclusions [cannot] be reached under any fair interpretation of the evidence.” (Claridge Gardens, 160 AD2d at 544-545 [emphasis added]; see also AGCO Corp., 61 AD3d at 563-564.) This is especially true when the “findings of fact rest in large measure on considerations relating to the credibility of witnesses.” (Claridge Gardens, 160 AD2d at 545.)
The landlord bears the initial burden of establishing by a preponderance of the evidence that the tenant is not occupying *126 the subject apartment as his or her primary residence. (See Glenbriar Co. v Lipsman, 5 NY3d 388 [2005].) If the landlord satisfies its initial burden, the tenant may rebut the evidence by demonstrating “a substantial physical nexus to the apartment.” (5 NY3d at 393, citing Draper v Georgia Props., 94 NY2d 809, 811 [1999].) The tenant must satisfy this burden with “objective, empirical evidence.” (Emay Props. Corp. v Norton, 136 Misc 2d 127, 128-129 [App Term, 1st Dept 1987].) However, the ultimate burden of persuasion remains with the landlord. (Emel Realty Corp. v Carey, 188 Misc 2d 280, 282-283 [App Term, 1st Dept 2001 per curiam], affd 288 AD2d 163 [1st Dept 2001].)
The term “primary residence” has not been defined by statute. (Katz Park Ave. Corp. v Jagger, 11 NY3d 314, 317 [2008].) However, the Rent Stabilization Code provides a list of factors that may be considered as evidence in determining whether a rent-stabilized apartment is a tenant’s primary residence. (See Rent Stabilization Code [9 NYCRR] § 2520.6 [u].) The factors include (1) the tenant’s use or nonuse of the apartment address on a tax return, motor-vehicle registration, driver’s license, or other publicly filed document; (2) the tenant’s use or nonuse of the apartment’s address as a voting address; (3) whether the tenant has lived in the apartment for fewer than 183 days in a calendar year; and (4) whether the tenant has subleased the apartment. (See id.)
In this case, in my opinion, the hearing court and the Appellate Term properly found that two of the four statutory factors undisputably favor a finding that the apartment was not the tenant’s primary residence. (See id.) While the tenant, as a Japanese citizen, is not eligible to vote, and thus has no address for voter registration purposes, she listed her Vermont address on her driver’s license and vehicle registration. Moreover, she listed the New York apartment address on a federal tax return only once in the relevant period and solely for the purpose of deducting her utilities and rent as a business expense. Additionally, in my opinion the Civil Court’s determination that the tenant spent less than 183 days per calendar year for the relevant period in the New York apartment was a fair interpretation of the evidence of the tenant’s credit card transactions. There was no evidence or any dispute to counter the assumption that the card traveled with tenant between New York and Vermont even though the tenant testified that her companion was authorized to use the credit and debit card. The tenant did not deny that she was in Vermont on any day when a Vermont transaction oc *127 curred, or provide evidence that she traveled to New York on any day in between two Vermont transactions: she did not maintain a parking space in New York, did not purchase an E-Z Pass, or provide Amtrak travel receipts or tickets to show travel between Vermont and New York.
In addition to the evidence suggested by the four statutory factors, a landlord is permitted to present other evidence, such as electrical bills. (See ACP 150 W. End Ave. Assoc., L.P. v Greene, 15 Misc 3d 1112[A], 2007 NY Slip Op 50589[U] [Civ Ct, NY County 2007]; see also Janco Realty Corp. v Lee, NYLJ, July 16, 1987, at 11, col 1 [App Term, 1st Dept 1987 per curiam] [telephone and other utility bills indicating frequency of use].) Evidence of negligible electrical usage is a significant factor used by courts in nonprimary residence analyses. (See Briar Hill Apts. Co. v Teperman, 165 AD2d 519 [1st Dept 1991] [finding minimal electrical use]; see also 156 E. 37th St. LLC v Black, 25 Misc 3d 1239[A], 2009 NY Slip Op 52496[U] [Civ Ct, NY County 2009] [noting low electrical consumption inconsistent with everyday living purposes].) In Carmine Ltd. v Gordon (41 AD3d 196 [1st Dept 2007]), this Court held for the landlord primarily on the basis of the tenant’s low electrical consumption. (41 AD3d at 198.) In Carmine Ltd., the tenant’s electrical records demonstrated that for four months, there was no electrical usage, and for seven months, the electrical usage did not exceed that which a refrigerator by itself would consume according to testimony from a Consolidated Edison employee. (See Carmine Ltd. v Gordon, 9 Misc 3d 138[A], 2005 NY Slip Op 51763[U] [App Term, 1st Dept 2005, McCooe, J., dissenting], revd 41 AD3d at 196.) In this case, the landlord presented similarly compelling evidence of the tenant’s “negligible” electrical usage during the relevant period.
Two witnesses testified about the tenant’s electrical consumption. The first, a customer service representative for Consolidated Edison, produced 35 of the tenant’s monthly bills (indicating actual usage in kilowatt hours and cost of consumption) from January 2004 until February 2007. The records reveal that for 33 of the 35 months, or 94% of the time, the tenant used between 55 and 133 kilowatt hours per month.
Further, the second witness, the landlord’s expert on reading, reporting, and installing electrical meters for residential and commercial properties, testified that the tenant’s electrical usage, at 50-150 kilowatt hours per month, was “considerably below” the average of 200 to 250 kilowatt hours for similarly- *128 sized studio apartments in Manhattan where the landlord provides heat and hot water as it does in the tenant’s case. The expert testified that a standard refrigerator alone consumes 140 kilowatt hours per month. In my opinion, the tenant’s explanation, which the majority accepts as adequate, cannot help her. That the tenant eats out or orders “take-out” in New York and does not cook in her oven does not explain why her electrical consumption during the relevant dates was either below, or roughly equal to, only that which a standard refrigerator alone uses. Indeed, in my opinion, a fair interpretation of such negligible consumption is that the tenant did not use her microwave, VCR, coffee maker, hair dryer, television or radio at any time during the relevant months. In other words she did not use the apartment for actual living purposes. Finally, the tenant’s attempt to explain her low New York electrical consumption by offering records from 1988-1989 which show similar consumption is, I believe, a wasted effort. There is simply no evidence that she was primarily residing in the apartment during that period either even though that period, when she purchased the Vermont property, is not at issue in this case.
Further, contrary to the majority’s conclusion, I believe that the testimony of the tenant’s witnesses fails to provide the requisite objective, empirical evidence to show that the tenant maintained a substantial nexus to the subject apartment for the relevant period. The majority emphasizes that no one found that “these witnesses were incredible.” In my opinion, that misses the point: even if credible (and some of it as mentioned above was plainly not credible), the testimony was too vague to effectively rebut the evidence presented by the landlord. Of the three neighbors who testified on behalf of the tenant, the first lived on the sixth floor, one floor above the tenant. He stated he saw the tenant in New York during the relevant period “probably one to two times a week, roughly” (emphasis added). The second neighbor testified he lived across the hall from the tenant. He stated he saw the tenant “very frequently,” that he shared meals with her, and watched films with her “occasionally.” The third neighbor lived on the second floor. He testified he saw the tenant roughly twice a week, and that the tenant was “never . . . away from my purview.” None of the three neighbors stated how often, or when, the tenant was in New York. Moreover, although the tenant admittedly visited Japan for approximately one month each year in 2004-2006, none of the witnesses could recall those specific absences. More *129 significantly, neither the tenant nor her long-time companion could specify any dates or periods of time when the tenant was in New York, and equally significantly could not produce any documentary evidence of travel between New York and Vermont whether by car or train or plane.
Generalized, sweeping statements from witnesses that they saw the tenant “quite often,” or “roughly twice a week” are as meaningless as the hyperbolic claim that the tenant was “never . . . away from my purview.” Indeed, precedent suggests such vague statements are insufficient to rebut any of the landlord’s documentary evidence. (See e.g., 156 E. 37th St. LLC v Black, 25 Misc 3d 1239[A], 2009 NY Slip Op 52496[U] [Civ Ct, NY County 2009], supra.)
The majority’s reliance on 300 E. 34th St. Co. v Habeeb (248 AD2d 50 [1st Dept 1997]) is misplaced. In Habeeb, the tenant demonstrated a substantial nexus to the subject apartment through witnesses who either lived with the tenant or visited the subject apartment daily and who testified to seeing the tenant in the subject apartment on a daily and nightly basis. (248 AD2d at 52.) The majority’s reliance on 310 E. 23rd LLC v Colvin (41 AD3d 149 [1st Dept 2007]) is equally misplaced. In Colvin, there is no reference to any testimony other than the tenant’s, thus the decision cannot stand for the proposition that vague testimony of friends and neighbors can establish a tenant’s substantial nexus for primary residential purposes.
Moreover, contrary to the testimony of the tenant and her witnesses, the landlord’s investigator testified that when she called the apartment, an acquaintance of the tenant who was identified as a friend who visited the apartment to water plants and pick up phone messages answered and said that the “[tenant] resides at both locations” and that she “spent the majority of her time ... in Vermont.” The majority is incorrect in stating that the tenant maintained a full-time job in Manhattan during the relevant period. The tenant, in fact, testified she was not employed, and worked only on an “[a]s-needed basis.” Indeed, it appears that the tenant used the subject apartment as her business office. On her 2004 federal tax return, she took a business deduction for rent and utilities, and labeled the apartment as her business address. In addition, one witness testified the tenant would occasionally return to New York for “rush jobs.” Thus, a fair interpretation of the evidence is that the tenant used the apartment during the relevant period as a business space and not for actual dwelling purposes as required by the *130 Rent Stabilization Code. (See Sommer v Ann Turkel, Inc., 137 Misc 2d 7, 10 [App Term, 1st Dept 1987] [stating the purpose of the Rent Stabilization Code is to protect “those tenants who actually require and actively use their apartments for dwelling purposes”] [emphasis added]).
Finally, the landlord produced evidence to show that in 2001, the tenant was primarily residing in Vermont. The tenant sent a letter dated October 15, 2001, to the former landlord of the building, stating “[i]n view of the September 11 WTC [a]ttacks and the ensuing situations, I am temporarily staying away from NYC” and requested that her “rent bill and other correspondence” be mailed to the Vermont address. The record contains no evidence of any notification that the tenant returned to use the New York apartment as a primary residence.
Given all of the foregoing, in my opinion, a fair interpretation of the evidence in this case leads to the conclusion that although the tenant moved into the subject apartment approximately 30 years ago, she relocated to Vermont after the events of 9-11 in 2001, and thereafter no longer used the New York apartment as her primary residence. The majority, in my opinion, neither attempts to nor does it establish that it is obvious that such conclusion cannot be reached under any fair interpretation of the evidence.
Mazzarelli, J.R, and Freedman, J., concur with Renwick, J.; Friedman and Catterson, JJ., dissent in a separate opinion by Catterson, J.
Order of the Appellate Term of the Supreme Court, First Department, entered on or about March 29, 2010, reversed, on the law and the facts, without costs, the holdover petition denied and the proceeding dismissed. The Clerk is directed to enter judgment accordingly.